J-S20017-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : IN THE SUPERIOR COURT OF |
| | :         PENNSYLVANIA |
| | : |
| v. | : |
| | : |
| | : |
| | : |
| EDWIN A. REYES | : |
| | : |
| Appellant | :  No. 1948 EDA 2025 |

Appeal from the Judgment of Sentence Entered May 2, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000795-2024

BEFORE: NICHOLS, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.:         **FILED AUGUST 5, 2026**

Edwin A. Reyes appeals from the judgment of sentence imposed following his conviction for kidnapping and related crimes.[1] He challenges the sufficiency of the evidence to support the kidnapping conviction, arguing the Commonwealth failed to prove he had the intent to inflict bodily injury on or to terrorize the victim. We affirm.

At Reyes's February 2025 waiver trial, the victim, Imani Classe, testified that on January 16, 2024, she ended her three to four months-long relationship with Reyes. N.T., Feb. 3, 2025, at 11-12, 45. The following day, she was at home at 9:00 P.M. when Reyes drove up to the outside of her house and began repeatedly calling and texting her phone to demand that she come outside and honking his horn. *Id.* at 12-15. Reyes told Classe in his text

_____

[1] 18 Pa.C.S.A. § 2901(a)(3).

messages that she should come out, he would "sleep right here in front of [her] house and cause a traffic jam," and he would "catch [her] in the morning taking [her siblings] to school if [he had] to." He stated that he was "not fucking leaving," she was "going to have to come kill [him]," and he would "just honk the horn until someone call[ed] the cops." Cmwlth. Exhs. C-1A, C1-C, C1-K, C-1M, C1-N; N.T., Feb. 3, 2025, at 14-17. Classe said Reyes also texted her a photograph of the front door of her home and sent her a message saying that "he was going to show [her] how delusional he can get." N.T., Feb. 3, 2025, at 15; Cmwlth. Exh. C-10; Trial Court Opinion, filed Sept. 26, 2023, at 3.[2] Classe responded to Reyes that she did not want to see him and that he needed to leave, but he kept insisting that she come out. . N.T., Feb. 3, 2025, at 17-20.

After arguing over text messages for a while, Classe agreed to go out and talk to him if he agreed to stay on the block in front of her house. *Id.* at 20. When Classe exited her house and entered Reyes' car, she was dressed in a T-shirt, a cardigan, and sweatpants, with no coat. *Id.* at 51. She said that Reyes drove to the parking lot of a shopping center, but when he saw police cars in the parking lot, he drove them to a park. *Id.* at 21-22. Classe testified

_____

[2] The trial court opinion and the notes of testimony reference Commonwealth Exhibit C-1G for this message. That exhibit is not part of the exhibits included in the certified record. During the cross-examination of Reyes, the text of the message was read to him as, "[Y]ou think I'm delusional. I'm going to show you how delusional I can get," and he did not dispute it. N.T., Feb. 10, 2025, at 40. The parties stipulated to the admission of Commonwealth exhibits C1A-JJ. N.T., Feb. 3, 2025, at 13.

that Reyes demanded to see her phone, and when she refused, the situation transitioned into "a different vibe." *Id.* at 22. She said that Reyes tried to take her phone and she tried to leave the car, but "[Reyes] grab[bed] [her] ponytail," "yank[ed] [her] back [in] and sped off." *Id*.

Classe said that Reyes told her she could go home if she wanted, and she left the car. However, Reyes came after her, dragged her back to the car, and shoved her in the back seat. *Id.* at 23-24. She stated that Reyes used a hoodie to tie her hands behind her back and when they began fighting again, "[Reyes] took the sweatshirt and he put it around [Classe's] neck," choking her. *Id*. at 24. Classe testified that at one point she and Reyes fought about her repeatedly opening and closing the car door, and he went to the driver's seat, came back with a gun and told her that "if [she] opened the door again he was going to shoot [her]." *Id.* at 25. She stated that Reyes also threatened to shoot her when she did not unlock her phone and he bit her leg when she tried to kick him. *Id*.

Classe stated they went to Reyes's mother's house with the intention of looking for an asthma inhaler for her because she couldn't breathe. *Id.* at 28. She stated that Reyes kept calling his mother and when she finally picked up, they got into an argument. *Id.* at 29. He hung up on his mother, and because his mother would not let him inside the house, he drove himself and Classe to another location where they continued to argue for approximately 20 minutes. *Id.* Classe said that he then drove them to a park, where she jumped out of the car and started to run. *Id.* at 30. She stated that it was cold and there

was ice on the ground, so "it was hard for [her] to run, and he came from behind [her] and tackled [her] to the ground." *Id.* She said Reyes took her back to the car, but he realized that he had lost her phone while outside and made her look for it with him. *Id.* She said that after they found it, she told Reyes she could not breathe, so he said that they would go to a gas station to get her water. *Id.* at 31.

Classe testified that when Reyes went inside the gas station, he had left his gun on the middle console of the car and she pushed the gun into the backseat. *Id.* Upon returning to the car, Reyes noticed that his gun was not there and he told "[Classe] that [she] needed to give him his gun back and when he finds it he's going to kill [her] and he's going to shoot [her]." *Id.* When asked by the Commonwealth why Classe did not leave the car when Reyes went inside the gas station, she stated that "I was scared," and "[e]very time I got out of the car, he threatened to kill me." *Id.*

Classe testified that Reyes retrieved his gun from the backseat and started driving, and they resumed arguing about her phone. Reyes parked the car at a random shop and told Classe that "he doesn't care about anything and how he doesn't really have nothing to lose" and that if she did not unlock her phone, "he [was] going to kill [her] and then kill himself." *Id.* at 32. She further stated that Reyes showed her the bullets inside the gun and explained to her what those particular bullets do, how they explode in the body. *Id.* When the Commonwealth asked her how many times Reyes threatened to shoot her, she replied, "More than ten times repeatedly throughout the night."

*Id*. at 32-33. Classe stated that Reyes asked her if she had talked to anybody since their breakup, and when she admitted that she had given her phone number to a man, he began calling her names, such as whore and bitch, and he slapped her across the face. *Id*. at 33.

Classe said that at one point she agreed to give Reyes her phone unlocked if he let her out of the car, and although he agreed he started driving the opposite way and parked on a dead-end road. *Id.* at 33-34. She said that Reyes told her to get out of the car, and when she refused, he got out of the car and took a ten minute walk with the gun and Classe's phone. *Id*. at 34. She stated that once he got back to the car, he demanded that she unlock her phone, and when she refused, he "got mad" and "he pulled his gun out and said I'm going to kill you, like, I'm really going to kill you." *Id.* Classe testified that she began pleading with Reyes, reminding him that she had a baby at home. *Id.*

Classe stated that her mother called her phone, which connected to the car's Bluetooth. *Id.* at 35. She answered the call and said that after she told her mother that Reyes was not letting her leave, Reyes hung up. *Id.* She testified that she reminded him that her mother had her location, and Reyes let her take her mother's second call, during which Reyes dismissed her mother's concerns and hung up. *Id.* She said that during a third call, Classe told her mother that he had hit her, he did not want her to leave the car, and he had a gun. *Id.* Classe testified that her mother told Reyes to leave her at a gas station and she would pick her up. *Id.* Reyes agreed and dropped her

off at the station. *Id.* She stated that Reyes screamed and threw things at her at the station, but he eventually left. *Id.* at 35-36.

On cross-examination, Classe testified she did not tell Reyes to come over on January 17, 2024, she and Reyes had a previous routine of going to the shopping plaza to talk while they were dating, and she had seen his gun before. *Id.* at 46-48. She also stated that she tried to pull the steering wheel away from Reyes, and that she did not kick Reyes while he was driving or wrap her legs around his head. *Id.* at 53.

On redirect examination, Classe stated that she pulled the steering wheel away from Reyes while he was driving because "he was going in the wrong direction," and that she asked Reyes to take her home "[m]ore than five times." *Id.* at 55-56.

Classe's mother, Illena Sanchez, testified that on January 17, 2024, she became suspicious that something was wrong with her daughter because she was not picking up her phone calls. *Id.* at 58. Sanchez stated that the first phone call she had with Classe was no more than five seconds long, and that Classe was "crying, screaming, saying she needed help." *Id.* She testified that when she finally picked up Classe, Classe was "out of it" and did not speak until they arrived home. *Id.* at 61-62.[3]

_____

[3] Detective Ruth of the Special Victims Unit testified that he investigated the kidnapping incident. He stated that he interviewed Classe. N.T., Feb. 3, 2025, at 66. He stated that he also executed a search warrant for Reyes's residence, where they recovered a firearm. *Id.* at 66-67. Detective Ruth also testified he
*(Footnote Continued Next Page)*

Reyes testified that on January 17, 2024, he asked Classe if he could come over and talk to her and she agreed, but once he arrived at her house, she did not answer his calls. N.T., Feb. 10, 2025, at 12. He testified that he continued to call Classe and began to knock on her door, asking her to come outside. *Id.* He said he called Classe's mother, Sanchez, and she said that Classe was not home, but the three of them could talk later. *Id.* at 12-13. He further stated that while on the phone with Sanchez, Classe opened the door, saw Reyes, and then closed the door. Reyes testified he drove his car to the front of her house and sent her a picture of the exterior of the house. *Id.* at 13. Reyes said that he got fed up with Classe's refusal and started honking the horn. *Id.* at 14. He testified Classe agreed to leave her house and she got into his car. *Id.* He stated he pulled into a shopping plaza, even though Classe wanted him to stay on her street, because there was no parking on Classe's block. *Id.* Reyes then testified that they stayed at the shopping plaza for at least 30 minutes and that Classe asked him to leave the plaza, so he drove to his mother's house and Classe was aware that they were going to his mother's house. *Id.* at 15-16.

Reyes testified that as they approached his mother's house, the argument between him and Classe became heated, Classe told him that she was going to send him a video of her having intercourse with another man,

_____

reviewed the video from the area of Russo Park and found a car that matched Classe's description in the said location several times within the hour time frame Classe provided, and he testified that the video depicted an individual walking around with some type of light looking on the ground. *Id.* at 72-74.

and Reyes called her a whore. *Id.* at 17. He said he parked at his mother's house, tried to call her, and then went inside the house looking for an asthma inhaler for Classe. *Id.* at 17-18. He also testified that his gun was inside the car's center console while he was inside the house, and the magazine was in the glove compartment. *Id.* at 18-19. He stated he did not take out the gun at any point, did not point the gun at Classe, and did not mention the bullet rounds to her. *Id.* at 18-21. Reyes said that Classe had seen his gun before. *Id.* at 20-21.

Reyes testified he tried to take her phone two or three times, "snatched" the phone out of her hand, and requested her passcode, but he gave the phone back because Classe refused to disclose her passcode. *Id.* at 21-22. He stated that he never told Classe that he was going to shoot her, but he did tell her that he was going to shoot himself. *Id.* at 22.

Reyes testified that after they left his mother's house, he began to take Classe home, but he stopped the car at a park and they talked, and then he drove to a gas station because Classe wanted water. *Id.* at 23-24. He said his gun never left the center console of the car, and when he got back to the car with water, Classe agreed to talk more, so they went back to the park. *Id.* at 25-26.

He stated that he and Classe began arguing and when she got out of the car and started walking down the sidewalk, he ran towards her, slipped on ice, and grabbed onto her to stabilize himself which caused them to fall together. *Id.* at 26. He said he guided her back to the car, but they could not

find her phone, so Reyes took his flashlight out to look for it. *Id.* at 26-27. Reyes stated that he did not try to choke Classe at any point, and he did not tie her up with a sweater. *Id.* at 27-28. Reyes testified that they began arguing again and Classe was "grabbing the steering whe[e]l while [Reyes] was driving and she pushed [Reyes] into incoming traffic." *Id.* at 28-29. He pushed Classe off of him and "she kicked [Reyes] and like wrapped around her legs around [his] neck until [he] was in a headlock," so Reyes "bit her" to get her to release him "because [he] was in the middle of driving and could not just stop or nothing because there [we]re cars behind [him] and . . . cars in front of [him]." *Id.* at 29.

Reyes testified that after the kicking incident he pulled into an alleyway and told Classe that she had to stop hitting him. *Id.* at 30. He testified that at one point he got out of the car and took a 10 minute walk, while Classe stayed inside the car with her phone. *Id.* at 30-31. He said that after his walk, he told her that she needed to stop fighting with him and agreed to take her home. *Id.* at 31-32.

Reyes further testified that Classe's mother, Sanchez, called Classe and that Classe "just flip[ped]," screaming that she was scared and needed help. *Id.* at 32. He said that he was confused and hung up the phone because "[he] didn't know what else to do." *Id.* at 32-33. He stated that he picked up the phone the second time and spoke to Sanchez, who said to drop off Classe anywhere, and he agreed to do so at a gas station. *Id.* at 33. Reyes testified that he offered to take Classe home but she refused, so he threw her a

sweatshirt and left. *Id.* at 33-34. He stated that after driving away he made a U-turn to check on Classe, and he saw her get into a car. *Id.* at 34.

On cross-examination, Reyes testified that Classe asked him multiple times to go home, but said she agreed to go to his mother's house so they could finish their conversation, and that Classe was the one who saw the police at the shopping plaza and wanted to leave. *Id.* at 36-37. He stated that he asked Classe to get into her phone multiple times and that there were several instances where Classe tried to get out of the car, but it was moving. *Id.* at 38-39. He also stated that over text messages Classe told him that she did not want to talk to him many times, but they had had a phone call during which they agreed that Reyes would come to her house. *Id.* at 40. Reyes said he felt "guilty for talking to other women, so [he] wanted to make it up to her." *Id.* Reyes testified that his firearm was in the center console of his car and the magazine in the glove compartment, he was a new gun owner and did not know he could not carry a gun like that, and that "that's how [he] viewed it safe since [he] didn't have a license to carry." *Id.* at 43-44. He testified that Classe was hitting and kicking him and wrapped her leg around his neck while he was driving, though when he was questioned about why he did not sustain any injuries, he stated that "she's a smaller woman" and he had his "hood up." *Id.* at 48. He also testified that he had a small injury to his hand, which he reported to the detectives. *Id.* at 49.

At the conclusion of the trial, Reyes was found guilty of kidnapping, strangulation, carrying a firearm without a license, carrying a firearm in public

- 10 -

in Philadelphia, unlawful restraint, possession of an instrument of crime, terroristic threats, simple assault, recklessly endangering another person, false imprisonment, and harassment.[4] The court sentenced Reyes to an aggregate sentence of three and a half to seven years' incarceration, followed by three years of reporting probation. Reyes filed a timely post-sentence motion, which the court denied. This appeal followed.

Reyes raises a single issue in his Statement of Question Involved:

> Was the evidence insufficient as a matter of law to sustain [Reyes's] conviction for kidnapping where the Commonwealth failed to prove beyond a reasonable doubt that [Reyes's] intent when he drove off with the complain[ant] was anything other than an attempt to convince her to continue their relationship, and his intent was not in fact to inflict bodily injury or to terrorize?

Reyes's Br. at 2.

Reyes challenges the sufficiency of the evidence to prove *mens rea*. He argues that the evidence was insufficient to sustain the conviction of kidnapping because the Commonwealth failed to prove beyond a reasonable doubt that Reyes had the intent to inflict bodily injury or to terrorize when he drove off with Classe. *Id.* at 10-11. Reyes argues that "any finding of intent to harm or terrorize Ms. Classe [wa]s not only based on surmise or conjecture because of the final outcome, but [wa]s contradicted by the actual evidence." *Id.* at 13. He argues that Reyes's intention was nothing more than to repair his relationship with Classe. Reyes argues that when the incident started, he

_____

[4] 18 Pa.C.S.A §§ 2901(a)(3), 2718(a)(1), 6106(a)(1), 6108, 2902(a)(1), 907(a), 2706(a)(1), 2701(a), 2705, 2903(a), and 2709(a)(1), respectively.

intended to convince Classe not to end the relationship, and claims he did not threaten her before she came to the car and that when he went to the shopping plaza his intent was to reconcile with her. *Id.* at 14-15. He claims the appropriate criminal conviction would have been false imprisonment, not kidnapping. *Id.* at 15.

This Court's standard of review for whether evidence was sufficient to sustain a charge is *de novo.* Our scope of review is plenary. ***Commonwealth v. Mikitiuk,*** 213 A.3d 290, 300 (Pa.Super. 2019). We evaluate "whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, is sufficient to establish all elements of the offense beyond a reasonable doubt." ***Id.*** (citation omitted; brackets omitted). This Court "may not reweigh the evidence or substitute our own judgment for that of the fact finder." ***Commonwealth v. Juray***, 275 A.3d 1037, 1042 (Pa.Super. 2022) (citation omitted). "Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail." ***Commonwealth v. Feliciano***, 67 A.3d 19, 23 (Pa.Super. 2013) (citation omitted).

The Crimes Code defines the offense of kidnapping, in relevant part, as follows:

> **(a) Offense defined.--**Except as provided in subsection
> (a.1), a person is guilty of kidnapping if he unlawfully
> removes another a substantial distance under the

circumstances from the place where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following intentions:

. . .

(3) To inflict bodily injury on or to terrorize the victim or another.

18 Pa.C.S.A. § 2901(a)(3).

Accordingly, to establish the crime of kidnapping under Section 2901(a)(3), the Commonwealth must prove that the defendant unlawfully removed another person a substantial distance under the circumstances from where he is found or unlawfully confined another person for a substantial period in a place of isolation and he had the intent to inflict bodily injury on or to terrorize the victim or another. **See Commonwealth v. Begley**, 780 A.2d 605, 619 (Pa. 2001).

In **In re T.G.**, the appellant was adjudicated delinquent under the same kidnapping statute as Reyes, and like Reyes, challenged the sufficiency of the evidence to prove *mens rea*. 836 A.2d 1003, 1005 (Pa.Super. 2003). According to the victim, the appellant pulled the victim into the appellant's house. **Id.** The victim testified that once she was inside, the appellant "pulled her hair, cursed at her, and threatened to physically harm the victim's mother" and that when the appellant "took the victim outside, she held the victim by the collar, threatened her with a metal bat, and again indicated that she was going to hurt the victim's mother." **Id.** at 1009. This Court found the evidence sufficient to establish that the appellant acted with the intent to terrorize the

victim, and therefore was sufficient to support the adjudication of delinquency.

*Id.*

Here, the trial court concluded the evidence was sufficient to support the finding Reyes had an intent to terrorize Classe:

> [S]ubstantial evidence was presented to establish that [Reyes] had the intent to terrorize Ms. Classe. Ms. Classe testified that [Reyes] grabbed her hair, restrained her, choked her, assaulted her, and threatened to kill her with his gun, which he brandished multiple times. The evidence showed that his threats were so convincing that Ms. Classe eventually came to believe that she was going to die.

Trial Ct. Op. at 10 (citations to record omitted).

We agree. The defendant refused to leave the spot in front of Classe's house until she agreed to go with him, stating that he was "not asking" and "not leaving," even though Classe refused him multiple times. *See* Cmwlth. Exh. C-1N. He sent a picture of her house, and said, "[Y]ou think I'm delusional. I'll show you how delusional I can get." *See* Cmwlth. Exh. C-1G, C-1O. Furthermore, Classe testified that Reyes grabbed her hair, tied her hands, choked her, bit her leg, tackled her to the ground, and threatened to kill her with a gun several times. N.T., 2/3/25, at 22-25, 30-34. Such evidence is sufficient to establish he acted with an intent to cause bodily injury or to terrorize, and that such intent existed from the moment she entered the car and throughout the encounter. *See In re T.G.*, 836 A.2d at 1009.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/5/2026